UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

JEFFREY W. MILLER,

              Plaintiff,

    -against-

MERCURIA ENERGY TRADING, INC.,
MERCURIA ENERGY ASSET
MANAGEMENT, BV, MERCURIA
CAPITAL PARTNERS LTD., MERCURIA
US ASSET HOLDINGS, LLC, UPSTREAM
LATINOAMERICA, S.L., and PHOENIX
GLOBAL RESOURCES PLC (f/k/a ANDES
ENERGIA PLC),

              Defendants.

-------------------------------------------------------x

ECF CASE

Civil Action No. 17-cv-08859 (JSR)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS PHOENIX GLOBAL RESOURCES PLC'S AND UPSTREAM LATINOAMÉRICA, S.A.'S MOTION TO DISMISS COUNTS I, IV AND V OF THE COMPLAINT

WOLLMUTH MAHER & DEUTSCH LLP
William A. Maher
Randall R. Rainer
Nicole M. Clark

500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Attorneys for Defendants Phoenix Global Resources plc and Upstream Latinoamérica, S.L.*

January 10, 2018

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ..............................................................................................4

      A.    Phoenix Global and ULA Are Incorporated in and Based in Europe, and
            Lack Any Jurisdictionally Sufficient Contacts with New York ............................4

            1.    Phoenix Global is an English Holding Company With Subsidiaries
                  Engaged Exclusively in the Oil and Gas Sector in South America ............4

            2.    ULA is a Spanish Holding Company Whose Sole Subsidiary Also is
                  Engaged Exclusively in the Oil and Gas Sector in South America ............5

      B.    Plaintiff's Preferred Shares in ULA and ULA's Articles of Association ...............6

      C.    Plaintiff's Separation Agreement with the Mercuria Parties ...................................7

      D.    The Phoenix Transaction ........................................................................................7

      E.    Plaintiff's Claims Against Phoenix Global and ULA.............................................8

ARGUMENT ......................................................................................................................10

  I.  PLAINTIFF MUST PLEAD A *PRIMA FACIE* BASIS FOR PERSONAL
      JURISDICTION OVER EACH DEFENDANT ...............................................................10

 II. PHOENIX GLOBAL AND ULA ARE NOT SUBJECT TO PERSONAL
      JURISDICTION IN NEW YORK...................................................................................11

      A.    There Is No Basis for General Jurisdiction Over Phoenix Global or ULA ..........11

            1.  Phoenix Global Is Not Subject to General Jurisdiction ...................................12

            2.  ULA Is Not Subject to General Jurisdiction ...................................................13

      B.    There Is No Basis for Specific Jurisdiction Over Phoenix Global or ULA ..........14

            1.  Phoenix Global Is Not Subject to Specific Jurisdiction...................................14

                  a.    Phoenix Global Has Not Transacted Business in New York....................14

                  b.    Plaintiff's Claims Against Phoenix Global Do Not Arise From Any
                        Phoenix Global Transaction of Business in New York ..........................15

i

         2.   ULA Is Not Subject to Specific Jurisdiction.....................................................16

            a.   ULA Has Not Transacted Business in New York .....................................16

            b.   Plaintiff's Claim Against ULA Does Not Arise From Any ULA Transaction of Business in New York .......................................................17

    C.     Requiring Phoenix Global and ULA to Litigate Plaintiff's Claims in New York Would Be Inconsistent with Traditional Notions of Fair Play and Substantial Justice................................................................................................................17

III.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF AGAINST PHOENIX GLOBAL ....................................................................18

    A.     Phoenix Global Is Not a Party To, Nor an Obligor Under, the Separation Agreement.............................................................................................................19

    B.     Phoenix Global Is Not the Successor-in-Interest to ULA......................................19

    C.     Count V Should Be Dismissed as Duplicative of Count IV And Is Contrary to the Express Terms of the Separation Agreement...................22

CONCLUSION.....................................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. Cal.*,
    480 U.S. 102 (1987)...............................................................................17

*Ashcroft v. Iqbal*,
    556 U.S 662 (2009) ...............................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) ....................................................................18

*BNSF Ry. Co. v. Tyrell*,
    137 S. Ct. 1549 (2017) ........................................................................11

*Best Van Lines v. Walker*,
    490 F.3d 239 (2d Cir. 2007).............................................10, 11, 14, 15

*Calcutti v. SBU, Inc.*,
    273 F. Supp. 2d 488 (S.D.N.Y. 2003)................................................18

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
    90 F. Supp. 3d 97 (S.D.N.Y. 2015) ...................................................12

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998)..................................................................15

*Cont'l Indus. Grp. v. Equate Petrochemical Co.*,
    586 F. App'x 768 (2d Cir. 2014) .......................................................10

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).............................................................2, 11, 12

*Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*,
    810 F.3d 861, 869 (2d Cir. 2015) .......................................................22

*Freeman v. Complex Computing Co.*,
    119 F.3d 1044 (2d Cir. 1997)...............................................................21

*Glencore AG v. Bharat Aluminum Co. Ltd.*,
    10-cv- 5251, 2010 WL 4323264 (S.D.N.Y. Nov. 1, 2010) ..................13

*Golub v. Kidder, Peabody & Co.*,
    89-cv-5903, 2000 WL 1024688 (S.D.N.Y. July 25, 2000)..........3, 20, 21

*Goodrich Capital, LLC v. Vector Capital Corp.*,
    11-cv-9247, 2012 WL 4123401 (S.D.N.Y. June 26, 2012)...................22

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) ...............................................................12

*Int'l Customs Assoc., Inc. v. Ford Motor Co.*,
    893 F. Supp. 1251 (S.D.N.Y. 1995)...................................................19

*Intessa Sanpaolo, S.P.A. v. Credit Agricole Corp. & Inv. Bank*,
    12-cv-2683, 2013 WL 4856199 (S.D.N.Y. Sept. 10, 2013) ...................................19

*Klutz v. Yagoozon*,
    16-cv-4538, 2016 WL 5806902 (S.D.N.Y. Sept. 20, 2016) ...........................11, 14

*MBIA Inc. v. Certain Underwriters at Lloyd's, London*,
    33 F. Supp. 3d 344 (S.D.N.Y. 2014).............................................19, 21

*MBIA Ins. Corp. v. Royal Bank of Canada*,
    706 F. Supp. 2d 380 (S.D.N.Y. 2009)...............................................19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)...............................................................17

*Newman v. Capitol Life Ins. Co.*,
    45 F. Supp. 3d 376 (S.D.N.Y. 2014)...............................................10

*Ray Legal Consulting Grp. V. DiJoseph*,
    37 F. Supp. 3d 704 (S.D.N.Y. 2014)...............................................23

*Ritchie Capital Mgmt. v. Costco Wholesale Corp.*
    14-cv-4819, 2015 U.S. Dist. LEXIS 176994 (S.D.N.Y. Sept. 21, 2015).. ......11, 12

*SPV OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015)...........................................11, 15

*Wiwa v. Royal Dutch Petrol. Co.*,
    226 F.3d 88 (2d Cir. 2000)...............................................................13

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
    933 F.2d 131 (2d Cir. 1991)...............................................................21

## **Statutes**

Fed. R. Civ. P. 12(b)(2)............................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................1, 18

N.Y. C.P.L.R. § 301...........................................................................10, 11, 12

N.Y. C.P.L.R. § 302(a)(1)....................................................................... *passim*

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendants Phoenix

Global Resources plc (formerly known as Andes Energia plc) ("Phoenix Global") and Upstream

Latinoamérica, S.L. ("ULA") respectfully submit this memorandum of law and the

accompanying Affidavits of Nigel Duxbury, sworn on January 10, 2018 ("Duxbury Aff."), and

Guillaume Vermersch, sworn on January 10, 2018 ("Vermersch Aff."), in support of (a) Phoenix

Global's motion to dismiss Counts IV and V of the Complaint for lack of personal jurisdiction,

or in the alternative, for failure to state a claim upon which relief can be granted, and (b) ULA's

motion to dismiss Count I of the Complaint for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

In commencing the present action against Phoenix Global, ULA and the Mercuria

Parties,[1] Plaintiff bears the burden to plead specific facts demonstrating a *prima facie* basis for

this Court's exercise of personal jurisdiction over each defendant.  Although the Mercuria Parties

are parties to an agreement with Plaintiff (the "Separation Agreement") in which they consented

to jurisdiction in New York, Phoenix Global and ULA are not parties to that agreement, and

Plaintiff has not even attempted otherwise to plead a factual basis for jurisdiction over them.

Nor could he.  Phoenix Global is a holding company organized and based in England,

and ULA is a holding company organized and based in Spain.  Both companies hold investment

interests in subsidiaries engaged in the oil and gas business exclusively in South America.

Phoenix Global and ULA never have been licensed to do business in New York, never have

contracted to supply goods or services in New York, nor ever transacted business in New York

---

[1]  Defendants Mercuria Energy Trading, Inc. ("Mercuria Energy"), Mercuria Energy Asset
Management, BV, Mercuria Capital Partners Ltd. and Mercuria US Asset Holdings, LLC are
collectively referred to as the "Mercuria Parties," and together with certain other relevant
affiliates, as appropriate, "Mercuria."

through subsidiaries, agents or otherwise.  Neither Phoenix Global nor ULA even has an office, a bank account, a telephone listing or any property in New York.

Accordingly, because Phoenix Global's and ULA's respective places of incorporation and principal places of business are outside of New York and neither of them has other contacts with New York so substantial that either of them can be considered "at home" in New York, this Court cannot exercise general jurisdiction over them.  *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

The Court also lacks any basis to exercise specific jurisdiction over Phoenix Global or ULA.  Plaintiff's claims against Phoenix Global and ULA center upon Plaintiff's contention that a recent transaction between Phoenix Global and other European companies (the "Phoenix Transaction") constituted a liquidation event that triggered Plaintiff's right, as a preferred shareholder of ULA, to receive a $32.6 million redemption payment.  In Count I against ULA, Plaintiff alleges ULA breached its Articles of Association by failing to make the redemption payment.  In Counts IV and V against Phoenix Global, Plaintiff alleges ULA also breached a separate obligation under the Separation Agreement to make the same redemption payment to Plaintiff, and that *Phoenix Global* is liable for such breach because Phoenix Global purportedly became ULA's "successor-in-interest" as a result of the Phoenix Transaction.

Such claims do not arise from, nor bear any articulable nexus with, any transaction of business in New York by Phoenix Global or ULA (or anyone else).  Rather, ULA could only have failed to pay Plaintiff from its sole office in Spain or the office of its director in Switzerland, and there is no allegation that any part of the Phoenix Transaction between Phoenix Global in England and other transaction parties elsewhere in Europe took place in New York.

Moreover, as noted above, Phoenix Global and ULA have not engaged in any jurisdictionally significant transactions of business in New York in the first place.

Therefore, there is no basis for the exercise of jurisdiction over Phoenix Global or ULA by this Court, nor should there be. At its core, this action is based upon Plaintiff's grievance against a Spanish company (ULA) for breach of a Spanish document governed by Spanish law (ULA's Articles of Association), which Plaintiff (a Texas resident) contends entitles him to a redemption payment as a preferred shareholder. Moreover, the Phoenix Transaction that Plaintiff contends triggered his redemption right and caused Phoenix Global to become ULA's successor-in-interest occurred between companies overseas. Such a dispute against Phoenix Global or ULA should proceed (if at all) in a Spanish or other European court, and in no event should ULA, or its new ultimate parent company Phoenix Global, be hailed into court in New York to defend against Plaintiff's assertions, which would offend traditional notions of fair play and substantial justice.

Finally, assuming *arguendo* that the Court were to exercise jurisdiction over Phoenix Global with respect to Counts IV and V, such claims still should be dismissed on the merits for failure to state a claim. *First*, because Phoenix Global is not a party to the Separation Agreement, it cannot be liable for breaching such agreement. *Second*, even if ULA were itself a party to the Separation Agreement (which it is not), the Phoenix Transaction did not render Phoenix Global the successor-in-interest of ULA. In the Phoenix Transaction, Phoenix Global was not a transaction counterparty with ULA, and thus no predecessor-successor relationship existed between them. More fundamentally, the Phoenix Transaction was effected through a purchase of *shares*, not a purchase of *assets,* and thus the doctrine of successor liability was not even implicated. S*ee Golub v. Kidder, Peabody & Co*., 89-cv-5903, 2000 WL 1024688, at *4

3

(S.D.N.Y. July 25, 2000).  *Finally*, Count V (breach by Phoenix Global of the covenant of good

faith and fair dealing under the Separation Agreement) should be dismissed because it is

duplicative of Count IV (breach by Phoenix Global of the Separation Agreement) and because

Count V alleges a breach of allegedly implied obligations under the Separation Agreement that

are directly contrary to the express terms of the Separation Agreement.

## FACTUAL BACKGROUND[2]

**A. Phoenix Global and ULA Are Incorporated in and Based in Europe,
And Lack Any Jurisdictionally Sufficient Contacts with New York**

**1. Phoenix Global is an English Holding Company
With Subsidiaries Engaged Exclusively in the
Oil and Gas Sector in South America**

Phoenix Global (formerly known as Andes Energia plc ("Andes")) is a holding company

incorporated under the laws of England and Wales with its principal place of business in London,

England.  Duxbury Aff. ¶¶ 2-3; Compl. ¶ 17.  Through various direct and indirect subsidiaries,

Phoenix Global owns investment interests in companies engaged in oil and gas exploration,

development and production solely in Argentina and Colombia.  Duxbury Aff. ¶ 3.

Phoenix Global never has engaged directly or indirectly in any oil and gas business, or

other business, in New York.  *Id.*  Phoenix Global never has been licensed, qualified or

registered to conduct business in New York and never has contracted to supply goods or services

in New York, including through brokers, consultants or agents.  *Id.* ¶¶ 4-5.

Phoenix Global never has maintained any office, place of business or mailing address in

New York.  *Id.* ¶ 6.  Its sole office and its officers, employees and books and records are located

---

[2] The facts set forth herein are taken from the Duxbury and Vermersch Affidavits or the
Complaint (ECF No. 1) ("Compl."), and the exhibits annexed thereto, as indicated.

in England.  *Id*. ¶ 6.  Phoenix Global never has maintained a bank account or telephone listing in New York, never has paid taxes of any kind in New York, and never has owned, used or possessed any real or personal property of any kind situated within New York.  *Id*. ¶¶ 7-9.

Phoenix Global never has maintained any director, officer, distributor, servant, employee, broker or wholesaler in the New York for the transaction of any business.  *Id*. ¶ 10.  Further, no entity, including any subsidiary of Phoenix Global, ever has held express or implied authority to act as Phoenix Global's agent to conduct business in New York.  *Id*. ¶ 12.

The ordinary shares of Phoenix Global are listed on the London Stock Exchange.  They are not listed on any U.S. stock exchange.  The Bank of New York issues and offers American Depositary Receipts ("ADRs") over Phoenix Global's ordinary shares, which are very thinly traded, with the ADRs held referencing less than 5,000 shares.  *Id*. ¶ 11.

### 2.  ULA is a Spanish Holding Company Whose Sole Subsidiary Also is Engaged Exclusively In the Oil and Gas Sector in South America

ULA is a holding company incorporated under the laws of Spain with its principal place of business in Madrid, Spain.  Vermersch Aff. ¶¶ 2-3; Compl. ¶ 16.  Through various subsidiaries, ULA has owned investment interests in companies engaged in oil and gas exploration, development and production exclusively in Argentina.  Vermersch Aff. ¶ 3.

ULA never has engaged directly or indirectly in any oil and gas business, or other business, in New York.  *Id*.  ULA never has been licensed, qualified or registered to conduct business in New York and never has contracted to supply goods or services in New York, including through brokers, consultants or agents.  *Id*. ¶¶ 4-5.

ULA never has maintained any office, place of business or mailing address in New York.  *Id*. ¶ 6.  Its sole office and books and records are located in Spain.  *Id*.  ULA never has

maintained a bank account or telephone listing in New York, never has paid taxes of any kind in

New York, and never has owned, used or possessed any real or personal property of any kind

situated within New York.  *Id*. ¶¶ 7-9.

ULA never has maintained any director, officer, distributor, servant, employee, broker or

wholesaler in New York for the transaction of any business.  *Id*. ¶ 10.  Further, no entity,

including any subsidiary of ULA, ever has held express or implied authority to act as ULA's

agent to conduct business in New York.  *Id*. ¶ 11.

**B.  Plaintiff's Preferred Shares in ULA**
      **And ULA's Articles of Association**

Plaintiff Jeffrey Miller was an employee of Mercuria Energy.  Compl. ¶¶ 1, 22.  He

initially was based at a Mercuria office in Switzerland, and then he relocated to Texas, where he

maintains a principal place of business.  *Id*. ¶¶ 11, 22.

In 2009, Plaintiff helped Mercuria acquire an oil and gas investment in Argentina called

Glacco Compania Petrolera S.A. ("Glacco").  *Id*. ¶¶ 1, 23.  In March 2010, as consideration for

Plaintiff's efforts in the Glacco acquisition, Plaintiff was allowed to purchase all of the preferred

shares in Glacco's parent company, ULA.  *Id*. ¶ 28.  Plaintiff's rights with respect to his

preferred shares in ULA were governed by the terms of ULA's Articles of Association, a

document governed by Spanish law.  Compl. ¶¶ 33-35 & Exh. B-4 (Plaintiff's proffered English

translation).  Under the ULA Articles of Association, in the event certain specified transactions

occurred and subject to further conditions, Plaintiff would be entitled to the redemption of his

preferred shares in ULA and the payment to him of a "preferred liquidation quota."  *Id*.  The

Complaint refers to such right as the "JWM Glacco Carried Interest."  *Id*.

6

C.  **Plaintiff's Separation Agreement with the Mercuria Parties**

In 2012, Plaintiff resigned, and in connection therewith he entered into a Mutual Release and Settlement Agreement, dated October 16, 2012, with the Mercuria Parties ("Separation Agreement").  Compl. ¶ 36 & Exhs. A-1 through A-3.  Phoenix Global and ULA are not signatories to the Separation Agreement.  *Id*.

The Separation Agreement described each of the individual agreements that existed between Plaintiff and each of certain Mercuria entities.  Section V of the Separation Agreement addressed the treatment of Plaintiff's JWM Glacco Carried Interest in connection with a potential merger/IPO transaction then being discussed with an Argentinian company named Roch S.A. ("Roch").  Compl. ¶¶ 38-39; Exh. A-1 & A-2, Section V.  The Separation Agreement also emphasized that Plaintiff's "Preferred Shares and statutory rights in ULA (or its successor entity) shall at all times continue to be governed by and construed, as applicable, in accordance with ULA's Articles of Association . . . and the laws of Spain. . . . ."  Exh. A-2, Section V(B)(vi).

D.  **The Phoenix Transaction**

On August 10, 2017, several years after Plaintiff left Mercuria, a transaction closed between Andes and a Netherlands company named Trefoil Holdings, BV ("Trefoil Holdings"), which the Complaint defines as the "Phoenix Transaction."

Prior to the Phoenix Transaction, the relevant organizational structure was as follows: Mercuria EG was the parent company of Upstream Capital, and Upstream Capital in turn was the parent company of Trefoil Holdings.  Trefoil Holdings was the parent company of ULA, which in turn was a parent company of Petrolera El Trebol, S.A. ("PETSA").[3]

---

[3] *Id*. ¶ 51 & Exh. D at 1 ("Upstream Capital, a subsidiary of Mercuria EG") and 10 ("Trefoil Holdings, a wholly-owned subsidiary of Upstream Capital"), and ¶¶ 4, 51 & Exh. D at 10 ("Trefoil Holdings indirectly owns over 99.99 per cent of the issued share capital of PETSA,

To effectuate the Phoenix Transaction, Andes entered into a "Share Purchase Agreement" with Upstream Capital and Mercuria EG pursuant to which (a) Andes purchased all of the issued shares of Trefoil Holdings and (b) Andes then issued shares of Andes stock to Upstream Capital sufficient to make Upstream Capital and Mercuria collectively own 78% of Andes. The other 22% of the shares of Andes were held by Andes' existing shareholders. *Id*. Exh. D at 11 ("Principal Terms of the Transaction"); *see also* Admission Document at Exh. E-1 (ECF p. 16 of 100 (same)) and Exh. E-14 (ECF pp. 100-102 of 183 (discussion of Share Purchase Agreement)).

Therefore, as a result of the Phoenix Transaction, Trefoil Holdings became a wholly-owned subsidiary of Andes, and the subsidiaries of Trefoil Holdings, including ULA, became indirect subsidiaries of Andes. Andes thereafter changed its name to Phoenix Global. *Id*. ¶ 51.

**E.**  **Plaintiff's Claims Against Phoenix Global and ULA**

Plaintiff contends that the Phoenix Transaction triggered his right to have his preferred shares in ULA redeemed and to be paid a preferred liquidation quota (the JWM Glacco Carried Interest) pursuant to both the ULA Articles of Association and the Separation Agreement. Plaintiff values such interest owed at $32.6 million.

In Count I, Plaintiff asserts a claim against ULA for breach of the ULA Articles of Association, alleging that "[t]he Phoenix Global Transaction constituted a dissolution or liquidation under the terms of the ULA's Articles of Association," which ULA has failed to pay. *Id*. ¶¶ 64-74.

In Count IV, Plaintiff asserts a claim against Phoenix Global for breach of the Separation Agreement, to which Phoenix Global is not a party. In a convoluted theory of successor liability,

---

*through its subsidiaries*, Trefoil Limited, Trefoil GmbH, Trefoil Switzerland S.A., San Enrique Petrolera B.V. *and Upstream Latino America S.L.*") (emphasis added)

Plaintiff alleges that (i) the Separation Agreement obligated the Mercuria Parties to redeem and pay Plaintiff the JWM Glacco Carried Interest "pursuant to the terms of the ULA Articles of Association and thereby committed ULA to redeem the JWM Glacco Carried Interest upon a redemption event," (ii) the Phoenix Transaction was a redemption event, and (iii) because "Phoenix Global acquired and exchanged all of Mercuria's stock in and control of ULA in the Phoenix Global Transaction, [] Phoenix Global is successor-in-interest to ULA with respect to ULA's commitment under the Separation Agreement." *Id*. ¶¶ 88-90.

In Count V, Plaintiff asserts a claim against Phoenix Global styled as a breach of the implied covenant of good faith and fair dealing in the Separation Agreement. Similarly alleging that "[t]he Separation Agreement includes a commitment by ULA to redeem the JWM Glacco Carried Interest pursuant to the terms of ULA's Articles of Association," Plaintiff asserts that ULA has acted in bad faith by failing to redeem and pay Plaintiff and thereby "denying [him] the benefits to which he is entitled under the Separation Agreement and vitiated his bargained-for-consideration agreed to in connection with his departure from Mercuria." *Id.* ¶¶ 93, 96. Plaintiff alleges that because "Phoenix Global is successor-in-interest to ULA with respect to ULA's commitment under the Separation Agreement," Phoenix Global is liable for ULA's breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 92-98.

**ARGUMENT**

**I.   PLAINTIFF MUST PLEAD A *PRIMA FACIE* BASIS FOR PERSONAL JURISDICTION OVER EACH DEFENDANT**

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists." *Best Van Lines v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). To do so, the plaintiff must "plead[] good faith allegations sufficient to establish jurisdiction." *Newman v. Capitol Life Ins. Co*., 45 F. Supp. 3d 376, 378 (S.D.N.Y. 2014) (Rakoff, J.) The plaintiff "must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone." *Cont'l Indus. Grp. v. Equate Petrochemical Co*., 586 F. App'x 768, 769 (2d Cir. 2014); *see also Newman*, 45 F. Supp. 3d at 378 ("[T]he Court is not bound to accept as true a legal conclusion couched as a factual allegation").

Despite bearing this burden, Plaintiff does not allege any facts supporting either general or specific jurisdiction over Phoenix Global or ULA. Indeed, Plaintiff's only jurisdictional allegation – made as to all defendants generally – is the conclusory assertion that "[t]his Court has personal jurisdiction over the defendants pursuant to N.Y. C.P.L.R. §301 and §302(a)(1)." Compl. ¶ 19. As such, Plaintiff has failed to allege anything resembling a *prima facie* basis for jurisdiction over Phoenix Global or ULA, and all claims against Phoenix Global and ULA should be dismissed on this ground alone.[4]

_____

[4] Aware of this threshold deficiency in his pleading, just yesterday, Plaintiff served discovery requests upon Phoenix Global and ULA seeking the production of documents concerning, *inter alia*, Phoenix Global's and ULA's purported jurisdictional contacts with New York (which as sworn in the Duxbury and Vermersch Affidavits, do not exist). Plaintiff is not entitled to such discovery to try to salvage his pleading. For a plaintiff to obtain jurisdictional discovery, it *first* must make out a *prima facie* case for jurisdiction over the defendant, which Plaintiff has utterly failed to do. *See Best Van Lines*, 490 F.3d at 255 ("We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a

## II. PHOENIX GLOBAL AND ULA ARE NOT SUBJECT TO <u>PERSONAL JURISDICTION IN NEW YORK</u>

Indeed, no factual basis exists for this Court to exercise personal jurisdiction over Phoenix Global or ULA under either CPLR § 301 (all-purpose general jurisdiction) or CPLR § 302(a)(1) (specific jurisdiction).

### A. <u>There Is No Basis for General Jurisdiction Over Phoenix Global or ULA</u>

"General jurisdiction allows a court to adjudicate 'any and all' claims against a defendant, regardless of whether the claims are connected to the forum state." *Ritchie Capital Mgmt. v. Costco Wholesale Corp.*, 14-cv-4819, 2015 U.S. Dist. LEXIS 176994, at *9 (S.D.N.Y. Sept. 21, 2015). The Supreme Court has made clear that a corporate defendant is subject to general jurisdiction *only* in its (i) place of incorporation and (ii) principal place of business," unless (iii) the "exceptional case" exists in which the foreign defendant's contacts with the forum state are "so substantial and of such a nature as to render the corporation 'at home' in" the forum state. *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015) (Rakoff, J.) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014)); *see also BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558-59 (2017) (reaffirming *Daimler*'s "Fourteenth Amendment due process constraint" irrespective of "the type of claim asserted or business enterprise sued").

*Daimler* has largely supplanted the "continuous and systematic" contacts test for general jurisdiction under CPLR § 301. "The factors relevant to whether a corporation's activities were sufficiently 'continuous and systematic' to establish general jurisdiction delineated by New York

---

prima facie case of jurisdiction"); *Klutz v. Yagoozon*, 16-cv-4538, 2016 WL 5806902, at *3 (S.D.N.Y. Sept. 20, 2016) (Rakoff, J.) ("The Court has discretion to deny jurisdictional 'discovery where the plaintiffs did not establish a prima facie case that the district court had jurisdiction over the defendant'…This is the case here. Plaintiff has failed to allege any connection between New York and the parties' business transactions") (citing *Best Van Lines*).

courts prior to *Daimler* and *Gucci*[5] are, after *Daimler*, 'relevant only if they exist to such a degree in comparison to the corporation's overall national and international presence that would render the corporation an 'exceptional case' where it is home in [an] additional forum.'" *Ritchie Capital*, 2015 U.S. Dist. LEXIS 176994, at *15 (quoting *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97 (S.D.N.Y. 2015)).  Accordingly, to assess Plaintiff's assertion that Phoenix Global and ULA are subject to general jurisdiction in New York under CPLR § 301, the Court need only consider whether each of Phoenix Global and ULA is incorporated in New York, has its principal place of business in New York, or has contacts with New York so substantial that it is rendered essentially "at home" in New York.  *Id*. at *11.

### 1. Phoenix Global Is Not Subject to General Jurisdiction

Because Phoenix Global is incorporated in England and Wales and its principal place of business is in London (Duxbury Aff. ¶ 2), Plaintiff cannot meet its burden under the primary tests for general jurisdiction under *Daimler*.

Plaintiff also cannot carry its burden of demonstrating that Phoenix Global has contacts with New York so substantial that Phoenix Global is the "exceptional case" where, despite being a London-based company, it should be considered "at home" in New York.  Phoenix Global never has been licensed, qualified or registered to conduct business in New York, never has contracted to supply goods or services in New York, and no entity, including any subsidiary of Phoenix Global, ever has held express or implied authority to act as Phoenix Global's agent to conduct business in New York.  Phoenix Global never has maintained any office, place of business, mailing address, bank account or telephone listing in New York.  And Phoenix Global

---

[5] *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014).

never has paid taxes or owned, used or possessed any property in New York.  *See id.* ¶¶ 4-9, 12. In no sense is Phoenix Global "at home" in the State of New York.

Although Phoenix Global does arrange through The Bank of New York to offer ADRs referencing Phoenix Global's ordinary shares that trade on the London Stock Exchange (Duxbury Aff. ¶ 11), such contacts – standing alone – are *not* sufficient to confer general jurisdiction.  *See*, *e.g.*, *Glencore AG v. Bharat Aluminum Co. Ltd.*, 10cv-5251, 2010 WL 4323264, at *7 (S.D.N.Y. Nov. 1, 2010) (holding that overseas defendant listing American Depositary Shares on the New York Stock Exchange and employing attorneys and a process agent in connection therewith did not subject defendant to jurisdiction in New York); *see also Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 97 (2d Cir. 2000) ("the prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depositary for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences").

### 2.  ULA Is Not Subject to General Jurisdiction

ULA is incorporated in Spain and its principal place of business is in Madrid.  Vermersch Aff. ¶ 2.  As such, Plaintiff also cannot satisfy the primary tests for general jurisdiction under *Daimler* with respect to ULA.

Likewise, Plaintiff cannot carry its burden of demonstrating that ULA has contacts with New York so substantial that ULA is the "exceptional case" where, despite being domiciled in Spain, it should be considered "at home" in New York.  Indeed, ULA does not have any contacts with New York.  ULA never has been licensed, qualified or registered to conduct business here, never has contracted to supply goods or services here, and no entity, including any subsidiary of

ULA, ever has held express or implied authority to act as ULA's agent to conduct business here. ULA never has maintained any office, place of business, mailing address, bank account or telephone listing in New York.  ULA also never has paid taxes or owned, used or possessed any property in New York.  *See id*. ¶¶ 4-9, 12.  There is simply no basis for this Court to find ULA "at home" in the State of New York.

**B.**  **There is No Basis for Specific Jurisdiction Over Phoenix Global or ULA**

"To determine the existence of [specific] jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."  *Best Van Lines*, 490 F.3d at 246 (alteration in original).

**1.**  **Phoenix Global Is Not Subject to Specific Jurisdiction**

**a.**  **Phoenix Global Has Not Transacted Business in New York**

Under part one of the above test, the defendant must have transacted business "in such a way that it constitutes 'purposeful activity'" – *i.e.*, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Id.*; *see also Klutz*, 16-cv-4538, 2016 WL 5806902, at *2 (Rakoff, J.) ("The overriding criterion necessary to establish specific jurisdiction is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York") (internal citations omitted).

As shown above, Phoenix Global has not transacted any such business in New York, and the Complaint does not allege that it has.  It never has engaged directly or indirectly in any oil and gas business, or other business, in New York, and it never has been licensed, qualified or registered to conduct business in New York.  Phoenix Global never has contracted to supply

goods or services in New York, including through brokers, consultants or agents.  Further, Phoenix Global never has maintained any director, officer, distributor, servant, employee, broker or wholesaler in the New York for the transaction of any business, and no entity, including any subsidiary of Phoenix Global, ever has held express or implied authority to act as Phoenix Global's agent to conduct business in New York.  Duxbury Aff. ¶¶ 3-5, 10, 12.   On this basis alone, Plaintiff necessarily fails to carry its burden to show a *prima facie* basis for specific jurisdiction under CPLR § 302(a)(1).

### b.  Plaintiff's Claims Against Phoenix Global Do Not Arise From Any Phoenix Global Transaction of Business in New York

Although not even at issue given Plaintiff's inability to satisfy – and failure even to plead allegations that might satisfy – the first test for specific jurisdiction under § 302(a)(1), under the second part of the test "a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.  A connection that is 'merely coincidental' is insufficient to support jurisdiction.'"  *Best Van Lines*, 490 F.3d at 249 (internal citations omitted) (alteration in original).  Importantly, "[i]n the Second Circuit, the strength of the causal connection between defendant's forum-related contacts and plaintiffs' claims that is required to establish specific jurisdiction varies depending on the substantiality of such contacts.  If the defendant 'has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state *only if* the plaintiff's injury was *proximately caused* by those contacts.'"  *SPV OSUS*, 114 F. Supp. 3d at 169 (quoting *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)) (emphasis added).  Given Phoenix Global's attenuated, wholly-unrelated contact with New York, Plaintiff fails to show a basis for specific jurisdiction over Phoenix Global on this ground as well.

15

Phoenix Global's only contact with New York is its fledgling offering of ADRs through The Bank of New York (which is not even jurisdictionally significant, as shown above).  There is, however, no articulable nexus whatsoever between such activity and Plaintiff's claim that Phoenix Global is liable as a successor-in-interest for ULA's alleged breaches of the Separation Agreement.  Phoenix Global's ADR program certainly did not proximately cause such alleged breaches of contract.  The only conduct in which Phoenix Global is alleged to have engaged giving rise to such claims is its consummation of the Phoenix Transaction with companies also located in Europe (*e.g.*, the Netherlands).  There is not, however, any allegation of conduct by Phoenix Global (much less a purposeful transaction of business) in connection with the Phoenix Transaction that occurred in New York.  Thus, there also is no specific jurisdiction over Phoenix Global on this basis.

**2.   ULA Is Not Subject to Specific Jurisdiction**

**a.   ULA Has Not Transacted Business in New York**

As shown above, ULA also has not transacted any business in New York.  It never has engaged directly or indirectly in any oil and gas business, or other business, in New York, never has been licensed to do business in New York, and never has contracted to supply goods or services in New York.  ULA never has maintained any director, officer, distributor, servant, employee, broker or wholesaler in New York for the transaction of any business, and no entity, including any subsidiary of ULA, ever has held express or implied authority to act as ULA's agent to conduct business in New York.  Vermersch Aff. ¶¶ 3-5,10-11.   Simply put, Plaintiff has not alleged any basis to conclude that ULA purposefully availed itself of the privilege of transacting business in New York.  As such, Plaintiff also has fatally failed to plead a *prima facie* basis for specific jurisdiction over ULA under CPLR § 302(a)(1) on this basis alone.

### b.   Plaintiff's Claim Against ULA Does Not Arise From <u>Any ULA Transaction of Business in New York</u>

Plaintiff also has failed to discharge his burden to plead that his sole claim against ULA – for breach of the ULA Articles of Association – has any articulable nexus with alleged conduct by ULA in New York.  All that Count I alleges is that ULA, presumably from its office in Spain, failed to make a liquidation preference payment to Plaintiff, presumably at his office in Texas, to which the ULA Articles of Association, which are governed by Spanish law, allegedly entitle Plaintiff based upon the Phoenix Transaction, which involved only overseas parties.  Compl. ¶¶ 64-74.  In no way has Plaintiff alleged that his claim under Count I arose from or was proximately caused by any transaction of business by ULA in New York.

### C.   Requiring Phoenix Global and ULA to Litigate Plaintiff's Claims in New York <u>Would Be Inconsistent with Traditional Notions of Fair Play and Substantial Justice</u>

Finally, even if the Court were to find sufficient minimum contacts to subject Phoenix Global and ULA to personal jurisdiction in New York, the exercise of jurisdiction over Phoenix Global and ULA is appropriate only if the Court further concludes that requiring Phoenix Global and ULA to litigate Plaintiff's claims in New York would not offend traditional notions of fair play and substantial justice.  *Asahi Metal Indus. Co., Ltd. v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).  To make this determination, the Court should consider the following factors: (i) the burden that the exercise of jurisdiction will impose upon the defendant; (ii) the interests of the forum state in adjudicating the case; and (iii) the plaintiff's interest in obtaining convenient and effective relief. *Asahi*, 480 U.S. at 113-14.

These factors decisively favor Phoenix Global and ULA.  Because all of Phoenix Global's and ULA's respective books and records, and most of their personnel (*i.e.*, witnesses),

are located in London, Spain or elsewhere in Europe – and *none* are located in New York –

litigating in New York will be far more burdensome and expensive for Phoenix Global and ULA

than defending Plaintiff's claims in their home jurisdictions.  Further, because none of Phoenix

Global, ULA or Plaintiff are resident in New York (Plaintiff alleges a principal place of business

in Texas), the State of New York has no interest in adjudicating the dispute between them.  As

such, to hail Phoenix Global and ULA into a New York Court to defend claims brought by a

Texas Plaintiff, which have no articulable nexus to any activity by Phoenix Global or ULA in

New York, would be the antithesis of fair play and substantial justice.  Moreover, in the case of

ULA, the ULA Articles of Association that underlie Plaintiff's claim for breach in Count I are

written in Spanish, concern the constitution and governance of a company formed under Spanish

law, and elect to have their terms governed by Spanish law (*see* Compl. Exh. B-4 Art. 13).

Whereas there is no logical rationale for placing such a claim before a New York Court, Count I

is precisely the type of claim that should be adjudicated before a tribunal in Spain.

## III.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF AGAINST PHOENIX GLOBAL

Assuming *arguendo* that Phoenix Global is found subject to personal jurisdiction in this

Court, each of Counts IV and V of the Complaint nevertheless should be dismissed based upon

Plaintiff's failure to state a claim upon which relief may be granted.

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the

plaintiff's claim "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell

Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  In considering the motion, the Court may

consider documents attached to the complaint as exhibits or incorporated therein by reference.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003).

### A. Phoenix Global Is Not a Party To, Nor An Obligor Under, the Separation Agreement

As a threshold matter, Phoenix Global cannot have direct liability for breach of contract or breach of the implied covenant of good faith and fair dealing with respect to the Separation Agreement because Phoenix Global is not a signatory to such agreement.  "It is well established that, generally, a party who is not a signatory to a contract cannot be held liable for breaches of that contract." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009); *see also Int'l Customs Assoc., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1255 (S.D.N.Y. 1995) ("with respect to the contract claim, a contract cannot bind a non-party").  On this basis, Counts IV and V should be dismissed.

### B. Phoenix Global Is Not the Successor-in-Interest to ULA

Plaintiff's assertion that Phoenix Global nevertheless can be liable for breaching the Separation Agreement based upon *ULA*'s alleged breach of obligations under the Separation Agreement, on the ground that Phoenix Global purportedly became the "successor-in-interest" to ULA, also fails.

As an initial matter, ULA is not a party to the Separation Agreement either, and thus ULA cannot have any liability under such agreement to which Phoenix Global could succeed. *See MBIA*, 706 F. Supp. 2d at 396; *Int'l Customs Assoc.,* 893 F. Supp. at 1255.[6]

---

[6] The Complaint's conclusory allegation that "[t]he Separation Agreement includes a commitment by ULA to redeem the JWM Glacco Carried Interest pursuant to the terms of ULA's Articles of Association" (Compl. ¶ 93; *id.* ¶ 88) is contradicted by the plain terms of the Separation Agreement and should therefore be afforded no weight. *See MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344, 353 (S.D.N.Y. 2014).   Rather, the Separation Agreement makes clear that that agreement is distinct from, and does not incorporate by reference, ULA's Articles of Association. *See Intessa Sanpaolo, S.P.A. v. Credit Agricole Corp. & Inv. Bank*, 12-cv-2683, 2013 WL 4856199, at *3-4 (S.D.N.Y. Sept. 10, 2013).

Furthermore, the central premise of Plaintiff's successor liability theory is entirely erroneous.  Plaintiff alleges in Counts IV and V that Phoenix Global is the successor-in-interest to ULA by virtue of the Phoenix Transaction.  Compl. ¶¶ 90, 98.  But the very nature of the Phoenix Transaction dictates that successor liability cannot apply here.  *First*, Phoenix Global entered into the Phoenix Transaction with ULA's parent company, Trefoil Holdings, not with ULA itself.  Therefore, no predecessor-successor relationship even existed between ULA and Phoenix Global.[7]  *Second*, even if the Phoenix Transaction could be construed as a transaction between Phoenix Global and ULA, the successor liability doctrine simply does not apply.  "The successor liability doctrine furnishes a narrow exception to the general rule that a corporation purchasing the *assets* of another is not liable for the debts and liabilities of the seller."  *Golub v. Kidder, Peabody & Co*., 89-cv-5903, 2000 WL 1024688, at *4 (S.D.N.Y. July 25, 2000) (emphasis added).  However, the successor liability doctrine has no application where the transaction between the purported predecessor and successor was for a purchase of *shares*.  "Where a corporation is acquired by the purchase of all of its outstanding stock, the corporate entity remains intact and *retains its liabilities*, despite the change of ownership.  Accordingly the successor liability doctrine, applicable to asset-purchase cases, has no office to perform" in a stock purchase case.  *Id*. (internal citations omitted).  That is precisely what happened in the Phoenix Transaction: Pursuant to a *Share Purchase Agreement*, Andes agreed "to acquire the entire *issued share capital* of Trefoil Holdings."  Compl. Exh. D at 11 ("Principal Terms of the

---

[7] Ostensibly aware of this fundamental flaw in his theory, Plaintiff obtusely tries to allege there was a transaction between Phoenix Global and ULA by averring "Phoenix Global acquired and exchanged all of *Mercuria's* stock in and *control of* ULA."  Compl. ¶ 90 (emphasis added). Nowhere, however, does the Complaint actually allege a transaction between Phoenix Global and ULA, nor did one ever occur.  *See supra* at 7-8 (Factual Background, Section D).

Transaction") (emphasis added); Exh. E-1 (ECF p. 16 of 100 (same)).  Successor liability is not a theory available to Plaintiff.[8]

 *Finally*, notwithstanding that the Phoenix Transaction was a share purchase acquisition of Trefoil Holdings, Plaintiff also erroneously alleges throughout the Complaint that the Phoenix Transaction was a "merger," presumably to suggest that Trefoil Holdings' subsidiary, ULA, was absorbed into Phoenix Global and ceases to exist, making Phoenix Global a successor to ULA's liabilities on that basis.  *See*, *e.g.*, Compl. ¶ 51 ("Upon completion of this merger. . .).  As discussed, however, such allegations are flatly contradicted by the transaction-related documents annexed to and cited in the Complaint, which describe only a purchase of the shares of ULA's parent, Trefoil Holdings.  Indeed, the Complaint does not allege otherwise.  Thus, the Complaint's misleading references to a "merger" to suggest a merger occurred between Phoenix Global and ULA specifically are not plausible and should not be credited as a basis to sustain Counts IV or V.  *MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("Allegations in the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness").

---

[8] *Golub* notes the relevant inquiry following a stock purchase transaction should be "whether these two entities' separate corporate structures should be disregarded under the doctrine of corporate veil-piercing." *Id.*  However, veil piercing requires a stringent showing that Plaintiff has not remotely alleged.  *See Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997) ("[T]o pierce the corporate veil under New York law, a plaintiff must prove that '(1) [the owner] ha[s] exercised such control that the [corporation] has become a mere instrumentality of the [owner], which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff'") (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991) (alterations in original)).

### C.  Count V Should Be Dismissed Because It Is Duplicative of Count IV And Is Contrary to the Express Terms of the Separation Agreement

Phoenix Global and ULA hereby incorporate by reference the arguments at pages 18-22 of the Mercuria Parties' motion to dismiss, which is being filed concurrently herewith.  ECF No. 22.

Therein, the Mercuria Parties argue that Count III (breach by the Mercuria Parties of the covenant of good faith and fair dealing implied under the Separation Agreement) should be dismissed as duplicative of Count II (breach by the Mercuria Parties of the Separation Agreement) because the underlying conduct and damages alleged in the former duplicate the underlying conduct and damages alleged in the latter.  Likewise, Count V (breach by Phoenix Global of the covenant of good faith and fair dealing implied under the Separation Agreement) is premised upon the same conduct underlying the breach of the Separation Agreement alleged against Phoenix Global in Count IV and seeks identical damages.  Therefore, for the same reasons and based upon the same authorities set forth by the Mercuria Parties, Count V should be dismissed.[9]

The Mercuria Parties also argue that Count III against the Mercuria Parties should be dismissed because the implied covenant alleged by Plaintiff is contrary to and would effectively nullify the express terms of the Separation Agreement.  By the same token, the implied covenant allegedly breached by Phoenix Global as "successor-in-interest" to ULA under Count V – *i.e.*,

---

[9] *See*, *e.g.*, *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) ("because the facts underlying both claims are identical and the Trustee seeks identical remedies, the claim for breach of the implied covenant was properly dismissed as duplicative); *Goodrich Capital, LLC v. Vector Capital Corp.*, 11-cv-9247, 2012 WL 4123401, at *5 (S.D.N.Y. June 26, 2012) (Rakoff, J.) (dismissing claims for breach of implied covenant of good faith and fair dealing because such claims "merely duplicate the two theories on which plaintiffs have based their breach of contract claims").

ULA's alleged obligation to make a redemption payment to Plaintiff based upon a merger/IPO transaction involving a company *other than* Roch – directly contradicts the express terms of the Separation Agreement.  For the same reasons and based upon the same authorities set forth by the Mercuria Parties, Count V should be dismissed on such basis as well.[10]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Phoenix Global and ULA respectfully request that the Court dismiss all claims against them with prejudice, and grant such other and further relief as may be just and proper.

Dated: January 10, 2018
　　　New York, New York

WOLLMUTH MAHER & DEUTSCH LLP


By: ___*/s/ Randall R. Rainer*_____
　　　William A. Maher
　　　Randall R. Rainer
　　　Nicole Clark

500 Fifth Avenue
New York, NY 10110
Telephone:  (212) 382-3300
Facsimile:  (212) 382-0500

*Attorneys for Defendants Phoenix Global Resources plc and Upstream Latinoamérica, S.L.*

---

[10] *See*, *e.g.*, *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 725-26 (S.D.N.Y. 2014) (the implied covenant of good faith and fair dealing "does not include any obligation that would be inconsistent with the express terms of the contract" and "does not operate to create new contractual rights").

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 10, 2018, a copy of the foregoing memorandum of law and the accompanying Affidavits of Nigel Duxbury and Guillaume Vermersch were served on the following parties via ECF filing and email:

John Siegal
(jsiegal@bakerlaw.com)
Andres Munoz
(amunoz@bakerlaw.com)

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone:  212-589-4200
Facsimile:  212-589-4201

*Attorneys for Plaintiff JEFFREY W.
MILLER*

Michael Carlinsky
(michaelcarlinksy@quinnemanuel.com)
Maaren Shah
(maarenshah@quinnemanuel.com)
Courtney Whang
(courtneywhang@quinnemanuel.com)

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  212-849-7150
Facsimile:  212-849-7100

*Attorneys for Defendants MERCURIA ENERGY
TRADING, INC., MERCURIA ENERGY ASSET
MANAGEMENT, BV, MERCURIA CAPITAL
PARTNERS LTD., and MERCURIA US ASSET
HOLDINGS, LLC*


      /s/ *Randall R. Rainer*